IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-01025-WYD

KATHRYN A. PUTNAM,

    Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

THIS MATTER is before the Court on review of the Commissioner's decision denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.  I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  For the reasons stated below,  I reverse the decision and remand to the Commissioner for further fact finding.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of a combination of impairments including cervical spine disorder, fibromyalgia, knee pain due to an injury, and mental health disorders including amnestic disorder, affective disorder, anxiety disorder, and post-traumatic stress disorder.  (Transcript ["Tr."] 18).

On April 28, 2006, Plaintiff filed an application for disability insurance benefits. After her application was denied initially, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 37-38).  The hearing was held on October 25,

2007, and the ALJ ultimately issued an unfavorable decision.  (Tr. 270-280).  Plaintiff appealed, and the Appeals Council reversed the ALJ's decision and remanded the claim for a new hearing.  On November 6, 2009, a different ALJ held a second hearing.  (Tr. 81-85, 281).  On May 17, 2010, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's subsequent appeal.  (Tr. 12-29, 6).

At the time of the most recent hearing, Plaintiff was 44 years old.  She has a master's degree in social work and served in the United States Air Force.  Plaintiff's past work experience includes USAF law enforcement, USAF air field management, case work and case management.  (Tr. 362-368).

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability insurance benefits.  (Tr. 16).  More specifically, at the first step of the sequential evaluation required by law the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged date of onset, March 1, 2007, through her last date insured of December 31, 2008.  (Tr. 839-840, 17).  At step two, the ALJ found that Plaintiff had severe impairments of fibromyalgia, disorder of the back, restless leg syndrome, amnestic disorder, affective disorder, anxiety, and post traumatic stress disorder from childhood.  (Tr. 18).  At step three, the ALJ found Plaintiff's condition did not meet or medically equal the requirements of any impairment in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.  (Tr. 18).

Next, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to perform light work as defined in 20 C.F.R. § 416.967(b) with occasional bending, squatting, and kneeling, except that Plaintiff could not be required to do over chest-level

work, complex tasks, and Plaintiff could only have occasional dealings with the general public. (Tr. 18). At step four, the ALJ found Plaintiff to be unable to perform her past relevant work. (Tr. 28).

Finally, at the fifth step, the ALJ relied upon vocational expert testimony to find that Plaintiff could perform work existing in significant numbers in the national economy. (Tr. 29). Accordingly, the ALJ found Plaintiff was not under a disability, as defined in the Social Security Act. (Tr. 29-30). Plaintiff appealed this decision to the Appeals Council. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. *See* 20 C.F.R. § 416.1481. This appeal followed.

Plaintiff alleges that the ALJ did not properly evaluate the opinions of treating physicians, and that the ALJ failed to link his credibility findings to factors based in substantial evidence.

II.     ANALYSIS

    A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. Whether a Remand is Appropriate

Plaintiff argues that the ALJ improperly evaluated the opinions from her treating psychiatrist, treating psychotherapists, and primary care provider.

On March 7, 2007, Dr. Gary Kielpikowski, Plaintiff's treating psychiatrist, opined that Plaintiff had marked limitations in her abilities to: remember locations and work like procedures; understand, remember and carry out detailed instructions; maintain attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or in proximity to others without being distracted by them; make simple work related decisions; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. (Tr. 219-220). On January 23, 2009, Dr. Kielpikowski further opined that while Plaintiff had many of the same marked limitations as he previously noted on March 7, 2007, she had extreme limitations in her abilities to: carry out detailed instructions; maintain attention and concentration for extended periods of time; and accept instructions and respond appropriately to criticism from supervisors. (Tr. 834-835). The ALJ gave Dr. Kielpikowski's March 7, 2007 opinions "no weight" and his January 23, 2009 opinions

"very little weight." (Tr. 22, 25).

I agree with Plaintiff that the ALJ did not properly evaluate Dr. Kielpikowski's opinions. First, the ALJ failed to apply the sequential two-step inquiry required when evaluating the medical opinions of a claimant's treating physician, "each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The initial determination the ALJ must make is whether a treating physician's medical opinion is "conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser*, 638 F.3d at 1330. "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.*

In this case the ALJ gave "no weight" or "very little weight" to Dr. Kielpikowski's opinions finding they were not supported by evidence or treatment notes or any supporting documentation. However, I find from a review of Dr. Kielpikowski's records that he made medical findings that supported his opinions, both in the Functional Capacity Evaluations (Mental) that he completed as well as in his treatment notes. (Tr. 172-173, 181-194, 199-200, 217-220, 240, 246-247, 258-259, 508, 604, 703, 709, 739, 745-746, 749-750, 834-835). Medical findings cannot be rejected in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). These findings are based on medically acceptable clinical or laboratory diagnostic techniques since they were based on his observed signs and symptoms during his years of treatment of Plaintiff. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). While the ALJ found that Dr. Kielpikowski's findings were not supported in the record,

this does not allow him to simply reject the opinion. *Id.* (citing SSR 96–2p, 1996 WL 374188, at *4). It still must be given deference at the second step of the inquiry. *Id.*

At the second step, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Robinson*, 366 F.3d at 1083. "If this is not done, a remand is required." *Id.* Here, the ALJ noted that he gave "no weight" or "very little weight" to Dr. Kielpikowski's opinions and findings. I disagree and find that the ALJ's reasons for giving little or no weight to Dr. Kielpikowski's opinions are not supported by substantial evidence. For example, the ALJ stated that Dr. Kielpikowski's January 2009 functional capacity evaluation is given "very little weight" as it is "not supported by any office or treating notes" or "supported by the evidence in the record." (Tr. 25). While Dr. Kielpikowski did not specifically address Plaintiff's functional limitations in his treatment notes, his opinion as to Plaintiff's functional limitations is not inconsistent with his treatment notes. The ALJ fails to recognize that there is a distinction between a doctor's notes for purposes of treatment and the doctor's opinions on the claimant's ability to work. *See Brownawell v. Comm'r of Soc. Security*, 554 F.3d 352, 356 (3rd Cir. 2008); *Jones v. Astrue*, No. 11 C 4827, 2012 WL 2018534, at *9 (N.D. Ill. June 5, 2012); *Cerrone v. Astrue*, Case No. 10-114, 2010 WL 2697923, at *14 (W.D. Pa. 2010). The treatment notes describe Plaintiff's condition at the time of the appointment while the Functional Capacity Evaluations (Mental) describe Dr. Kielpikowski's assessment of Plaintiff's ability to function in a work setting. *See Brownawell*, 554 F.3d at 356.

In his treatment notes, Dr. Kielpikowski made findings concerning Plaintiff's appearance, activity, thoughts, emotional state and cognitive functioning during her numerous appointments, and made other observations about Plaintiff's mental status. He also altered and modified Plaintiff's medications to help her manage her symptoms associated with depression. Contrary to the ALJ's decision, these findings are not contrary to or inconsistent with Dr. Kielpikowski's opinions in the Functional Capacity Evaluations (Mental). Moreover, he noted during his years of treatment that Plaintiff's functioning worsened at times. This certainly seems consistent with his findings of marked to extreme impairments.

Dr. Kielpikowski's opinions were also supported by Plaintiff's treating psychotherapists and primary care provider. Laura French, one of Plaintiff's treating psychotherapists, opined that "it is not in [Plaintiff's] best interest to try and attain employment but rather to work toward regular participation in activities that are not physically demanding and will reduce stress." (Tr. 174). Nancy Galbraith, Plaintiff's other treating psychotherapist, assessed Plaintiff's GAF scores at 50, 51 and 52.[1] Moreover, she noted during her treatment of Plaintiff that functioning worsened at times.

Similar conclusions were also reached by consultative examiner Shirley Robbins,

---

[1] The "global assessment of functioning" scale is given as part of the 5-axis diagnostic scheme recommended in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. ("DSM-IV"), 1994, page 32. A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." A GAF of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Psy.D.; primary care provider Linda German, MS, NP; primary care provider Sara Kelley, MS, NP; and consultative examiner Victor Neufeld, Ph.D. Additionally, the state agency psychologist, Sara Sexton, Psy.D., who performed a "records only" review, opined that Plaintiff had moderate limitations in various work-related activities where Dr. Kielpikowski opined that Plaintiff's limitations were "marked" or "extreme." Interestingly, I also note that the ALJ gave "significant weight" to social security physician, Dr. Lichtenberg's opinion on the basis that his assessment was by an "examining physician." (Tr. 24). Yet Dr. Lichtenberg essentially agreed with Dr. Kielpikowski (who is also an examining physician) noting that Plaintiff had "[m]arkedly reduced [functioning] in all levels due to pain, her perception of pain, mental and behavioral disorder." (Tr. 628).

Since the ALJ did not follow the proper procedure in connection with weighing treating physician Dr. Kielpikowski's opinions and relied on illegitimate reasons in rejecting his findings, this case must be remanded for further fact finding. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) ("'Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'") (quotation omitted).

While conflicts in the evidence are generally for the ALJ to resolve, *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988), it is not possible in this instance for me to determine that the ALJ's choice between the various medical source opinions was justified, *see Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that ALJ is required to "'ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case'") (quoting Social Security Ruling 06-03p, 2006 WL 2329939 at *6 (SSA Aug. 9, 2006)). Moreover, given how permeated the decision is with error, I conclude that harmless error review is not appropriate in this case. Based on the record before me, I cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). On the other hand, and for this same reason, I cannot find that this case presents an appropriate occasion for the exercise of my discretion to direct an award of benefits in plaintiff's favor. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).

The fact that Dr. Kielpikowski's opinion must be reweighed will also require the ALJ to reweigh the other medical evidence, including the opinions of the other treating sources, consultative examiners, and the state agency physicians and psychologists. I also note for purposes of the remand, that the ALJ gave "great weight" to the testimony of expert witness, Dr. Steven Gerber, at the October 2007 hearing before the previous ALJ. The transcript of that testimony was not included in the administrative record, thus, I have no ability to determine whether it is supported by substantial evidence.

Moreover, it appears to me that the ALJ's failure to consider the treating source records also infected the ALJ's credibility determination. Given his recitation of the evidence, it appears that the ALJ believed Plaintiff to be either a malingerer or a

hypochondriac, or perhaps both.[2]  Thus, although "credibility determinations are peculiarly the province of the finder of fact," *White v. Barnhart*, 287 F.3d 903, 908-09 (10th Cir. 2001) (citation and internal quotation marks omitted), the ALJ's failure to appropriately weigh the treating source records in this case leads to the conclusion that his credibility findings are not supported by substantial evidence.

III.  CONCLUSION

Based upon the foregoing, I find that the ALJ erred in not following the treating physician rule.  In light of this, the medical evidence must be reweighed on remand.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  February 12, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

---

[2] In addition, the ALJ's reliance on Plaintiff's activities of daily living as undermining her credibility is suspect.  Such minimal activities as recounted by the ALJ do not necessarily translate well into a determination of what Plaintiff can do on a sustained basis in the workplace. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  In addition, the ALJ seems to have ignored that Plaintiff has "bad days" where her symptoms are exacerbated.  (Tr. 626-627).